**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-23787-SMITH/DAMIAN

ANGELIQUE CHAPPELL,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

**ORDER ON PLAINTIFF'S MOTION TO EXCLUDE**
**EXPERT TESTIMONY PURSUANT TO *DAUBERT* [ECF NO. 41]**

THIS CAUSE is before the Court on Plaintiff, Angelique Chappell's ("Plaintiff"), Motion to Exclude Testimony Pursuant to *Daubert*, filed on December 2, 2022 [ECF No. 41] (the "Motion"). The Motion was referred to the undersigned by the Honorable Kathleen M. Williams, United States District Judge. [ECF No. 43]. *See* 28 U.S.C. § 636(b)(1)(A).[1]

THIS COURT has reviewed the Motion, the Response [ECF No. 47], and Reply thereto [ECF No. 51], as well as the documents submitted in support of the Motion, including the Report [ECF No. 41-1] and Declaration of Dr. Daniel Buffington [ECF No. 47-1], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, the Motion to Exclude Expert Testimony [ECF No. 41] is **GRANTED IN PART AND DENIED IN PART**.

---

[1] On January 27, 2023, the case was reassigned to the Honorable Rodney Smith, United States District Judge. [ECF No. 53].

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a maritime negligence action in which Plaintiff seeks damages for injuries allegedly sustained while a passenger aboard Defendant's cruise ship, the *Carnival Horizon*. [ECF No. 21] ("Amended Complaint") at ¶¶ 12–14. Plaintiff alleges she was severely injured when she slipped and fell as she was stepping on a wet, foreign, or transitory substance on the metal nosing of the second to last step of a staircase on the vessel. *Id.*

Plaintiff filed this lawsuit on October 27, 2021. [ECF No. 1]. In the operative Amended Complaint, filed on July 8, 2022, Plaintiff asserts claims for (1) negligent maintenance and (2) negligent failure to warn. *See* Am. Compl. at 4–7. More specifically, Plaintiff alleges that Carnival was negligent for its alleged failure to: (a) "timely and adequately [ ] inspect the staircase on which . . . Plaintiff fell for slipping hazards"; (b) "cordon off or restrict access to the dangerous area of the staircase"; (c) "timely [ ] correct the dangerous condition of the staircase"; and (d) "adequately maintain the staircase." *Id.* ¶ 21. Plaintiff also alleges that Carnival failed to warn her of the "dangerous condition on the onboard staircase leading from Deck 4 to Deck 2" of the vessel. *Id.* ¶ 24. Plaintiff alleges that as a result of her slip and fall, she sustained permanent and continuing injuries, including a tibial fracture, pain, mental anguish, sustained disfigurement, disability, and the inability to lead a normal life. *Id.* ¶ 16. Defendant filed an Answer and Affirmative Defenses to the Amended Complaint on July 19, 2022. [ECF No. 22].

On November 4, 2022, Defendant filed a Motion for Summary Judgment [ECF No. 34], which is ripe as of November 28, 2022. Thereafter, on December 2, 2022, Plaintiff filed

the Motion now before the Court.[2] In her Motion, Plaintiff seeks to strike the testimony of Defendant's clinical pharmacologist and toxicology expert, Dr. Daniel Buffington ("Dr. Buffington"), on the grounds his testimony and opinions are unreliable.

Plaintiff's Motion is now fully briefed and ripe for adjudication.[3]

## II. THE ISSUES RAISED IN THE MOTION

Plaintiff seeks to exclude the testimony of Dr. Buffington, a clinical pharmacologist and toxicology expert retained by Defendant to opine regarding Plaintiff's estimated blood alcohol concentration ("BAC") and the impacts on her faculties at the time of the alleged incident. *See* Mot. at 1–2. More specifically, Plaintiff argues that Dr. Buffington's opinions are premised on "unsupported assumptions and unreliable methodology" and should, therefore, be stricken pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Id.* According to Plaintiff, Dr. Buffington "lacks the necessary information" regarding the "type and quantity of alcohol" consumed, "food intake," and "rate of absorption" to make any reliable estimate of Plaintiff's BAC at the time of her fall. *Id.* at 4–5. Plaintiff also takes issue with Dr. Buffington's methodology and argues that his opinions regarding Plaintiff's estimated BAC are based solely on Plaintiff's deposition testimony, shipboard medical records, and drink receipts—none of which identifies "how much of the drinks the Plaintiff purchased [while onboard] were actually consumed by the

---

[2] That same day, Defendant filed its *Daubert* Motion seeking to strike the opinions of Plaintiff's engineering expert and to strike or limit the testimony of Plaintiff's hybrid medical experts. [ECF No. 42]. Defendant's *Daubert* Motion will be addressed in a separate order.

[3] Although this case was previously set for trial during the trial period beginning March 27, 2023, the jury trial and calendar call were terminated on January 30, 2023. Thereafter, on February 15, 2023, the parties filed a Joint Motion for Status Conference or, alternatively, Motion for Extension of Time to File Joint Pretrial Stipulation and Joint Summary of the Parties' Motions *In Limine*. [ECF No. 54].

Plaintiff." [ECF No. 51] ("Reply") at 1. Lastly, Plaintiff argues that Dr. Buffington cannot offer any opinions concerning the safety of the onboard stairs on which Plaintiff fell or the mechanics of her interaction with those stairs since Dr. Buffington does not purport to be qualified as an accident reconstruction expert, biomechanics expert, human factors expert, or engineer. Mot. at 6.

In response, Defendant contends that Dr. Buffington used a reliable methodology and is qualified to offer the opinions, as detailed in his Report, regarding Plaintiff's level of intoxication and the effect such intoxication may have had on her fall. Resp. at 2–8. Defendant avers that Plaintiff's challenges to the reliability of Dr. Buffington's calculations of Plaintiff's estimated BAC, "go to the weight, not the admissibility of the expert evidence." *Id.* at 6. And Defendant maintains that Dr. Buffington "does not offer opinions regarding accident reconstruction or biomechanics, nor is he held out as an expert in these fields." *Id.* at 7. In further support of these arguments, Defendant submitted the Declaration of Dr. Buffington, which explains his methodologies and includes his curriculum vitae. [ECF No. 47-1].

### III.   APPLICABLE LEGAL STANDARDS

#### A. *Analyzing The Admissibility Of Expert Testimony*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (citing *Daubert*, 509 U.S. at 594–95). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005).

In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Eleventh Circuit refers to each of these requirements as the "qualification," "reliability," and "helpfulness" prongs. *Frazier*, 387 F.3d at 1260. While some overlap exists among these requirements, the Court must analyze each one individually. *Id.*

**Qualifications**: An expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020) (Bloom, J.). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id*. So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id*.

**Reliability**: In determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262. The same criteria applies to both scientific opinions and experience-based testimony. *Id.* at 1261–62. (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Even so, the Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire*, 526 U.S. at 152.

**Helpfulness**: Expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (Torres, J.) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify regarding his opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (Williams, J.) (quoting *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009)). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Id.* at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

## IV.   DISCUSSION

With the foregoing in mind, the Court turns to the issue of whether Defendant's toxicology expert, Dr. Buffington, should be permitted to testify at trial in this case regarding the opinions set forth in his Report.

*A. Qualifications*

Although Plaintiff does not challenge Dr. Buffington's qualifications[4] to offer testimony regarding intoxication levels and the effects of such intoxication, the Court briefly addresses his qualifications as required by the three-part inquiry. *City of Tuscaloosa*, 158 F.3d at 562.

An expert may be qualified "by knowledge, skill, experience, training, or education." *See Easterwood*, 2020 WL 6880369, at *2. The Court finds that Dr. Buffington is qualified to offer his opinions concerning Plaintiff's estimated BAC and its effects on Plaintiff on the date of the subject incident. Dr. Buffington is a clinical pharmacologist who holds a Doctor of Pharmacy and Master of Business Administration degrees. Buffington Decl. at 1. He is on the faculty of the University of South Florida's College of Pharmacy, and he is also the President of the American Institute of Pharmaceutical Sciences. *Id.* at 2. As a licensed pharmacist who specializes in pharmacology and toxicology with over thirty years of professional experience, Dr. Buffington has expertise in measuring the amount of a substance (*i.e.*, alcohol) in the body and the associated effects of alcohol consumption on an individual's faculties. *Id.* at 1–3. More specifically, Dr. Buffington has received training and has practical experience in calculating the estimated BAC based on an individual's physical characteristics and the details surrounding consumption. *See id*. The Court also notes that Dr. Buffington has been tendered as an expert regarding BAC and its associated effects in over fifty cases. *See id*.

---

[4] Plaintiff does posit that Dr. Buffington is not qualified to testify as an accident reconstruction expert, biomechanics expert, human factors expert, or engineer (Motion at 6), but Dr. Buffington is not offered as an expert on such subjects, and, therefore, the Court need not address whether he is qualified as such.

Accordingly, the Court determines that Dr. Buffington is qualified to offer his expert opinions regarding Plaintiff's estimated level of intoxication and associated effects at the time of the alleged incident.

### B. Reliability

In her Motion, Plaintiff primarily argues that Dr. Buffington's opinions are based on unsupported assumptions and an unreliable methodology. *See* Mot. at 1–2. Defendant asserts that Dr. Buffington's opinions are supported by reliable methodologies as detailed in his Report. *See* Resp. at 3–7.

According to his Report, Dr. Buffington reviewed and relied on Plaintiff's sworn deposition testimony, the pleadings filed in this matter, shipboard and hospital medical records, and drink receipts from purchases made by Plaintiff on the date of her alleged fall. *See* Buffington Report at 1. According to his Declaration, Dr. Buffington calculated Plaintiff's estimated BAC at the time of the alleged incident using the Widmark Equation, which is the standard methodology for blood alcohol testing and confirmation in forensic science. Buffington Decl. at 4. Specifically, Dr. Buffington utilized the standard factors—such as the percentages of alcohol in a beverage, the individual's weight, the number of hours since the first drink, and a distribution factor to account for total body water—as derived from the records he received to perform the standard Widmark Equations. *Id.* Using the Widmark formula, Dr. Buffington determined that Plaintiff had an estimated blood alcohol concentration between 0.083 g/dL and 0.099 g/dL at the time of her fall. Buffington Report at 2.

As further detailed in his Report and Declaration, Dr. Buffington opined that Plaintiff's estimated BAC would have been consistent with experiencing signs and symptoms

associated with diminished attention, judgment, and self-control, sensory-motor impairment, impaired perceptions, and reduced sensory response, among other associated symptoms in accordance with the Dubowski Table, a peer-reviewed table that is used to illustrate the progressive stages of alcohol influence and intoxication on human performance. *Id.* at 3; *see also* Buffington Decl. at 6. Based on these findings, Dr. Buffington concluded that Plaintiff's ingestion of alcohol impaired her abilities and contributed to her fall and subsequent injuries on the date of the alleged incident. *See* Buffington Report at 4; Buffington Decl. at 6. Dr. Buffington further opined that alcohol consumption and influence is a common risk factor for various non-fatal injuries, including falls, and fatalities. Buffington Report at 4.

As noted above, in determining whether an expert used reliable methods, the trial judge typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Frazier*, 387 F.3d at 1261–62 (citing *Quiet Tech.*, 326 F.3d at 1341). These four factors are illustrative, not exhaustive. *Id.* at 1262.

Upon review of Dr. Buffington's Report, Declaration, and curriculum vitae, the Court finds that Dr. Buffington's methodologies for determining Plaintiff's estimated BAC and its effects at the time of the alleged incident are reliable. *See Kessler v. NCL (Bah.) Ltd.*, No. 19-cv-20583, 2019 WL 8128483, at *2–3 (S.D. Fla. Dec. 20, 2019) (Otazo-Reyes, J.) (finding forensic toxicology expert's methodology of reviewing breadth alcohol testing results, using the Widmark formula, and making assumptions, including the plaintiff's size, weight, and elimination rate for alcohol, was reliable to calculate plaintiff's level of intoxication and alcohol impairment at the time of plaintiff's fall aboard a vessel); *see also Shea v. Royal Enters.,*

*Inc.*, No. 09 Civ. 8709, 2011 WL 2436709, at *3–4 (S.D.N.Y. June 16, 2011) (noting the Widmark formula "is a 'robust' formula that has been tested and applied for nearly 80 years," "has been the subject of peer review," and "enjoy[s] general acceptance in the scientific community").

Plaintiff argues there are no tests to help Dr. Buffington determine exactly what Plaintiff's BAC level would have been at the time of the alleged fall. Mot. at 3; Reply at 2. The Court agrees the record reflects an absence of tests conducted at the time of the incident regarding Plaintiff's BAC. While having a definitive BAC test would certainly help substantiate Dr. Buffington's opinions, the absence of such testing does not render Dr. Buffington's methodologies unreliable. As already discussed above, Dr. Buffington explains in his Report that he relied on information available to him to apply the Widmark Equation and determine an estimated BAC, and he relied on the Dubowski Table to render opinions regarding the effects of intoxication. Both the Widmark Equation and the Dubowski Table are reliable and generally accepted in the scientific community. To the extent Plaintiff challenges the reliability of the data used to apply these standards, Plaintiff's challenges go more to the weight that should be given to Dr. Buffington's testimony by a trier of fact rather than exclusion pursuant to *Daubert*. Plaintiff's argument that there is no direct evidence of her estimated BAC based on actual testing done at the time of the alleged incident may be explored on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Kessler,* 2019 WL 8128483, at *3 ("Plaintiff's criticisms of Dr. Forney's methodology do not render Dr. Forney's opinion unreliable to the extent that it should be stricken under *Daubert*.

10

Rather, Dr. Forney's opinions should be subject to [v]igorous cross-examination, presentation of contrary evidence, and careful consideration on the burden of proof.").

Therefore, the Court finds that Defendant has satisfied its burden of demonstrating, by a preponderance of the evidence, the reliability of Dr. Buffington's methodologies used to reach his opinions concerning Plaintiff's estimated BAC and its associated effects on her faculties. *See Rink*, 400 F.3d at 1291–92 (party offering the expert testimony must demonstrate admissibility by a preponderance of the evidence).

### C. *Helpfulness*

Plaintiff does not appear to challenge the helpfulness of Dr. Buffington's opinions regarding BAC and its associated effects for a jury. In any event, the Court finds Dr. Buffington's opinions regarding Plaintiff's estimated BAC and associated effects on her faculties are helpful for the factfinder because, although the general effects of alcohol consumption are commonly known, the methodology for determining an individual's BAC and an opinion on the associated physiological manifestations of a specific BAC level are beyond the understanding and experience of the average lay citizen and goes to the ultimate finding of Plaintiff's potential comparative fault. *Cf. Broberg v. Carnival Corp.*, No. 17-CV-21537, 2018 WL 4778457, at *3 (S.D. Fla. June 11, 2018) (Louis, J.) (finding that a toxicologist and drug safety expert offers "unique testimony as to [plaintiff's] BAC at the various times during the events leading up to her fall overboard and opinion on the attendant physiological manifestations of that BAC level").

Accordingly, based on the foregoing, the Court finds that Dr. Buffington's opinions regarding Plaintiff's estimated BAC and its physiological effects on her faculties are admissible under Rule 702 and *Daubert*.

### D. *The Exclusion Of Dr. Buffington's Legal Conclusions About Causation*

Plaintiff challenges Dr. Buffington's opinion that Plaintiff's estimated level of alcohol consumption led her to be impaired and contributed to her fall. Mot. at 6. Plaintiff further asserts that Dr. Buffington is not qualified as an accident reconstruction expert, biomechanics expert, human factors expert, or engineer, and, therefore, he cannot offer reliable opinions concerning the safety of the stairs on which Plaintiff fell or the mechanics of her interaction with those stairs. *Id.*

Defendant responds that "Dr. Buffington is not offered as an expert on accident reconstruction, human factors, or biomechanics but is only offered to opine regarding Plaintiff's level of intoxication and the physical and perceptual impairments associated with that level of intoxication *that caused Plaintiff to be more likely to fall than another not similarly impaired*." Resp. at 8–9 (emphasis added).

Plaintiff's concerns on this issue are well-taken. Experts may not offer legal conclusions as opinions. *See United States v. F.E.B. Corp.*, 52 F.4th 916, 932 (11th Cir. 2022) ("While expert witnesses may offer opinions on an 'ultimate issue' in a case, they may not offer 'legal conclusions.'"); *Romano v. John Hancock Life Ins. Co. (USA)*, No. 19-21147-CIV, 2022 WL 1447733, at *1 (S.D. Fla. May 9, 2022) (Goodman, J.) ("It is well settled that experts are not permitted to offer legal conclusions as opinions. On questions of the law, the fact finder does not look to the parties, the lawyers, or the witnesses for the answers; she looks to only the Court.").

The Court agrees with Plaintiff that Dr. Buffington's opinion that Plaintiff's alcohol consumption caused or contributed to her fall and subsequent injuries is an improper legal conclusion regarding causation that invades the province of the jury and is not helpful. *See*

*Falic v. Legg Mason Wood Walker, Inc.*, No. 03-80377-CIV, 2005 WL 5955704, at *4 (S.D. Fla. Jan. 10, 2005) (Ryskamp, J.) ("Although an expert may testify as to his opinion on an ultimate issue of fact, he may not merely tell the jury what result to reach. An expert also may not testify to the legal implications of conduct; the court must be the jury's only source of law." (citing Fed. R. Evid. 704 (committee notes); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir.1990)). The Court's consideration of a similar challenge in *Matter of Hanson Marine Properties Inc.*, No. 2:20-cv-958, 2022 WL 3716429, at *2 (M.D. Fla. Aug. 29, 2022), is informative. There, the district court precluded a toxicology expert from testifying that the plaintiff's "alcohol and drug consumption, or its effects, caused or contributed to [her] fall" during a boating accident. *Id.* The district court noted that "experts in toxicity cases often seek to testify that a substance was the specific cause of an injury," but "an expert must at least consider other factors that could have been the sole cause of the injury." *Id.* (citing *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1309 (11th Cir. 2014)). Similarly, here, the Court finds Dr. Buffington's opinion that Plaintiff's intoxication caused or contributed to her fall is impermissible.

Accordingly, Dr. Buffington is precluded from testifying that Plaintiff's alcohol consumption, or its effects, caused or contributed to Plaintiff's fall. Rather, Dr. Buffington may testify regarding Plaintiff's estimated BAC on the date of the incident, the methodology for determining an individual's estimated BAC, and the attendant physiological manifestations that result from such intoxication levels, which are not legal conclusions and are beyond the expertise of an average lay juror.

Lastly, as noted in Defendant's Response, Dr. Buffington was not offered as an accident reconstruction expert, biomechanics expert, human factors expert, or engineer. Resp.

at 7. Thus, to the extent Plaintiff seeks to exclude Dr. Buffington from offering expert opinions regarding the mechanics of Plaintiff's fall or whether the design of the staircase where she fell contributed to her fall, the requested relief is unnecessary because Dr. Buffington is not offered to provide such opinions and, as such, will not be permitted to do so at trial.

V.   **CONCLUSION**

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion to Exclude the Expert Testimony of Daniel E. Buffington [ECF No. 41] is **GRANTED IN PART AND DENIED IN PART**.

As set forth above, Daniel Buffington may offer expert testimony regarding Plaintiff's estimated BAC at the time of the subject incident and the effects of such BAC on her faculties, but he may not offer expert opinions regarding whether Plaintiff's estimated BAC caused or contributed to her fall.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of March 2023.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　MELISSA DAMIAN
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of record