## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23787-SMITH/DAMIAN

ANGELIQUE CHAPPELL,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

### ORDER ON DEFENDANT'S *DAUBERT* MOTION [ECF NO. 42]

THIS CAUSE is before the Court on Defendant, Carnival Corporation's ("Defendant"), *Daubert* Motion, filed December 2, 2022 [ECF No. 42] (the "Motion"). In the Motion, Defendant seeks to strike the testimony of Plaintiff's engineering expert, Andres Correa, and to strike or limit the testimony of Plaintiff's treating physicians, Dr. Catherine Cahill and Dr. Anthony Florschutz. The Motion was referred to the undersigned by the Honorable Kathleen M. Williams, United States District Judge. [ECF No. 43]. *See* 28 U.S.C. § 636(b)(1)(A).[1]

THIS COURT has reviewed the Motion, the Response [ECF No. 46], and Reply thereto [ECF No. 52], as well as the documents submitted in support of the Motion, the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's *Daubert* Motion [ECF No. 42] is **GRANTED IN PART AND DENIED IN PART**.

---

[1] On January 27, 2023, the case was reassigned to the Honorable Rodney Smith, United States District Judge. [ECF No. 53].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a maritime negligence action in which Plaintiff seeks damages for injuries allegedly sustained while a passenger aboard Defendant's cruise ship, the *Carnival Horizon*. [ECF No. 21] ("Amended Complaint") ¶¶ 12–14. Plaintiff alleges she was severely injured when she slipped on a wet, foreign, or transitory substance on the metal nosing of the second to last step of a staircase on the vessel causing her to fall and sustain serious injuries. *Id.*

In the operative Amended Complaint, filed July 8, 2022, Plaintiff asserts two claims: (1) negligent maintenance and (2) negligent failure to warn. *Id.* at 4–7. More specifically, Plaintiff alleges Carnival was negligent for its alleged failure to: (a) "timely and adequately [ ] inspect the staircase on which . . . Plaintiff fell for slipping hazards"; (b) "cordon off or restrict access to the dangerous area of the staircase"; (c) "timely [ ] correct the dangerous condition of the staircase"; and (d) "adequately maintain the staircase." *Id.* ¶ 21. Plaintiff also alleges Carnival failed to warn her of the "dangerous condition on the onboard staircase leading from Deck 4 to Deck 2" of the vessel. *Id.* ¶ 24. And she alleges that as a result of her slip and fall, she sustained permanent and continuing injuries, including a tibial fracture, pain, mental anguish, sustained disfigurement, disability, and the inability to lead a normal life. *Id.* ¶ 16. Defendant filed an Answer and Affirmative Defenses to the Amended Complaint on July 19, 2022. [ECF No. 22].

On November 4, 2022, Defendant filed a Motion for Summary Judgment [ECF No. 34], which is ripe as of November 28, 2022.[2] Thereafter, on December 2, 2022, Defendant

---

[2] On April 3, 2023, Judge Smith referred Defendant's Motion for Summary Judgment to the undersigned for a Report and Recommendation and for appropriate ruling on any related matters. [ECF No. 56].

filed the Motion now before the Court.[3] In the Motion, Defendant seeks to strike the opinions of Plaintiff's engineering expert, Mr. Correa, on grounds he is unqualified, his methodology is unreliable, and his opinions constitute legal conclusions, are irrelevant to the case, and unhelpful to the jury. Defendant also seeks to strike or limit the testimony of Plaintiff's treating physicians, Dr. Cahill and Dr. Florschutz, on grounds neither doctor provided a report pursuant to Federal Rule of Civil Procedure 26(a), their anticipated testimony is cumulative, and Dr. Cahill allegedly failed to appear for her deposition. [ECF No. 42].

The Motion is now fully briefed and ripe for adjudication.[4]

## II.   APPLICABLE LEGAL STANDARDS

### A. *Analyzing The Admissibility Of Expert Testimony*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (citing

---

[3] That same day, Plaintiff filed a Motion to Exclude the anticipated testimony of Defendant's toxicology expert. [ECF No. 41]. This Court addressed Plaintiff's Motion in a separate order. [ECF No. 55].

[4] Although this case was previously set for trial during the trial period beginning March 27, 2023, the jury trial and calendar call were terminated on January 30, 2023. Thereafter, on February 15, 2023, the parties filed a Joint Motion for Status Conference or, alternatively, Motion for Extension of Time to File Joint Pretrial Stipulation and Joint Summary of the Parties' Motions *In Limine*. [ECF No. 54].

*Daubert*, 509 U.S. at 594–95). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005).

In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Eleventh Circuit refers to each of these requirements as the "qualification," "reliability," and "helpfulness" prongs. *Frazier*, 387 F.3d at 1260. While some overlap exists among these requirements, the Court must analyze each one individually. *Id.*

**Qualifications**: An expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020) (Bloom, J.). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id.* So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id.*

**Reliability**: In determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of

the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262. The same criteria applies to both scientific opinions and experience-based testimony. *Id.* at 1261–62. (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Even so, the Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire*, 526 U.S. at 152.

**Helpfulness**: Expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (Torres, J.) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify regarding his opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (Williams, J.) (quoting *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009)). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Id.* at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

## III.    DISCUSSION

With the foregoing in mind, the Court first considers Defendant's challenges regarding Plaintiff's engineering expert, Mr. Correa, and the opinions set forth in his Report, and then addresses Defendant's challenges to Plaintiff's treating physicians, Drs. Cahill and Florschutz, and whether they should be permitted to offer their expert opinions at trial.

### A.    *Proposed Engineering Expert Andres Correa*

Plaintiff disclosed Mr. Correa as an engineering expert and provided Mr. Correa's Expert Report [ECF No. 42-1 ("Correa Report")] which sets forth the opinions he intends to offer at trial regarding the condition of the staircase on which Plaintiff fell. Mr. Correa was also deposed in this case. [ECF No. 42-2 ("Correa Dep. Tr.")]. Defendant seeks to preclude

Mr. Correa from offering expert testimony at trial altogether based upon the opinions set forth in Mr. Correa's Report. In his Expert Report, Mr. Correa states that he relied on Plaintiff's deposition testimony, the guest and crew accident summary reports, as well as observations made, and photographs taken during his site inspection. Correa Report at 3–7. The Report also summarizes various federal and international regulations governing maritime vessels that Mr. Correa reviewed. *Id.* At the end of the Report, Mr. Correa sets forth five opinions and conclusions:

> 1)     The Defendant created an unsafe condition by allowing the existence of a walking surface that did not contain a uniformly slip resistant surface.
>
> 2)     The Defendant created an unsafe condition by allowing the existence of excessively large handrails that were not graspable.
>
> 3)     The Defendant created an unsafe condition by allowing the existence of an excessively sloped tread surface.
>
> 4)     The Defendant knew, or should have known, of the dangerous and noncompliant conditions present along the subject stairway, but failed to rectify the deficiencies in a timely manner, in order to provide safe pedestrian access and egress.
>
> 5)     The dangerous and noncompliant conditions present along the pedestrian route were not readily apparent to users, the route was not safe for pedestrian use at the time of the accident, and the Defendant was responsible for its deficient conditions.

*Id.* at 7.

Defendant raises two general bases for precluding Mr. Correa's testimony. First, Defendant challenges Mr. Correa's proposed testimony concerning his first, fourth, and fifth opinions on grounds they do not satisfy the qualifications, reliability, and helpfulness prongs under *Daubert*. Mot. at 3–11. Second, Defendant argues Mr. Correa's second and third opinions are improper because they are based on alternative theories of liability not pled by Plaintiff in the Amended Complaint. *See id.* at 11–12.

### 1.  Defendant's *Daubert* Challenges To Mr. Correa's Expert Opinions

Defendant contends Mr. Correa should not be permitted to testify as to his first, second, and fourth opinions because he is not qualified; his opinions are not based on a reliable methodology; and his opinions constitute improper legal conclusions, are irrelevant to the case, and are not helpful. *See generally* Mot. at 3–13. Plaintiff opposes the Motion by highlighting Mr. Correa's experience as an engineer and argues that his methodology is reliable, and the opinions are helpful. *See generally* Resp. at 1–5.

### <u>Qualifications</u>

Defendant first argues that Mr. Correa is not qualified to offer an opinion in this case because his experience is limited to large-scale, land-based, civil engineering projects. Mot. at 4. According to Defendant, as a land-based engineer, Mr. Correa does not have any expertise on uniquely maritime issues, including the design or construction of maritime stairs for passenger use, human factors, or slip resistance. *Id.* at 3–4.[5] In response, Plaintiff cites Mr. Correa's experience, as laid out in his Report, as a licensed professional engineer and building inspector and points out that he has inspected cruise vessels on approximately twenty occasions within the last decade. Resp. at 1–2.

An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The qualifications of an expert must satisfy a relatively low threshold, beyond which qualification becomes a credibility issue for the jury." *McWilliams v. Novartis*

---

[5] Defendant also argues in its Reply that Mr. Correa is unqualified to opine on safety standards of maritime vessels and that his testimony should be excluded because he did not explain how his experience helped him formulate his opinions. [ECF No. 52 ("Reply") at 1–2]. Because Defendant did not raise these issues in its original brief, they are deemed waived and are not considered in the instant Order. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 n.4 (11th Cir. 2004) ("A party cannot argue an issue in its reply brief that was not preserved in its initial brief.") (quotation marks omitted); *see also Kellner v. NCL (Bah.), LTD.*, 753 F. App'x 662, 667 (11th Cir. 2018) (collecting cases).

*AG*, No. 17-CV-14302, 2018 WL 3364617, at *2 (S.D. Fla. July 9, 2018) (Rosenberg, J.) (quotation marks omitted); *see also Lewis v. Carnival Corp.*, 570 F. Supp. 3d 1189, 1192 (S.D. Fla. 2021) (Rosenberg, J.) (citing *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) ("[S]o long as the expert is at least minimally qualified, gaps in his qualifications generally will not preclude admission of his testimony, as this relates more to witness credibility and thus the weight of the expert's testimony, than to its admissibility.")). Therefore, "[a]n expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)).

The Court finds that Mr. Correa satisfies this relatively low threshold and is qualified to testify as an engineering expert in this case. Review of Mr. Correa's Report and deposition testimony reflects that, as a licensed professional engineer and building inspector, Mr. Correa has substantial relevant experience, including design, construction, building code compliance, and maintenance. Correa Report at 2, 64–66. And, as noted in Plaintiff's Response, Mr. Correa has performed inspections of cruise vessels on approximately twenty occasions since 2012. *See also* Correa Dep. Tr. at 86. He specializes in inspecting and evaluating "the aspects of vessels that are utilized by pedestrians," such as "access and egress routes" and "common areas" of the vessel that are "constructed similarly to how they are on land." Resp. at 2; *see also* Correa Dep. Tr. at 93–94. And, the Court notes that at least one other court in this District has found Mr. Correa qualified to testify as an expert in a maritime case. *Lewis*, 570 F. Supp. 3d at 1192.

Defendant's argument that Mr. Correa is unqualified because he is not an expert in maritime vessels, human factors, or slip resistance seeks to hold Mr. Correa to a more

demanding standard than required by Rule 702 or *Daubert*. *See Lewis*, 570 F. Supp. 3d at 1192 (finding Mr. Correa qualified to testify as an expert in a maritime personal injury action).

Therefore, Defendant's Motion is denied to the extent it is based on Mr. Correa's qualifications to offer his expert opinions in this case.

<u>Reliability</u>

Defendant next argues that Mr. Correa's first opinion, that the walking surface of the staircase at issue is not uniformly slip resistant, is not based on a reliable methodology because Mr. Correa did not conduct any objective tests to determine the slip resistance of the nosing on the subject staircase. Mot. at 4–7. Defendant contends that Mr. Correa's methodology of touching the nosing on the leading edges of the step with his fingers to determine its slip resistance "is not a scientific method and is mere speculation." *Id.* In Response, Plaintiff asserts that although Mr. Correa did not conduct slip resistance or coefficient-of-friction testing of the nosing on the subject stairs, he explains that he inspected the stairs, observed and compared them with other stairs on the same vessel, documented these observations through photographs, and took measurements of the nosing on the stairs where Plaintiff fell. Resp. at 4–5. Mr. Correa then detailed his observations regarding slip resistance in his Report. *See* Correa Report at 3–4. Based on his observations, detailed in the Report, Mr. Correa concluded that "Defendant created an unsafe condition by allowing the existence of a walking surface that did not contain a uniformly slip resistance surface." *Id.* at 7.

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261–62. To make this determination, the Court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been

subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* at 1262 (citing *Quiet Tech.*, 326 F.3d at 1341). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* Thus, the aforementioned factors are illustrative, not exhaustive. *Id.* Furthermore, whether expert opinions require "detailed measurements or experiments" depends on the type of analysis required to form an opinion on the matter. *See Higgs v. Costa Crociere S.P.A. Co.*, No. 15-60280-CIV, 2016 WL 4370012, at *6 (S.D. Fla. Jan. 12, 2016) (Cohn, J.) (finding that an expert opining on conformity to industry safety standards could base his opinion on a "personal inspection and pictures of the dining area where the incident occurred, a review of relevant discovery documents, and his extensive experience"); *see also Holley v. Carnival Corp.*, No. 20-cv-20495, 2021 WL 5371507, at *4 (S.D. Fla. Nov. 18, 2021) (Bloom, J.).

Upon review of Mr. Correa's Report and deposition testimony, the Court finds that the methodologies used to formulate his opinions regarding the slip resistance of the subject staircase are sufficiently reliable. Mr. Correa conducted a visual inspection of the subject stairs and compared them to different stairs on the same vessel, and he reviewed Plaintiff's deposition testimony and the guest and crew accident summary reports to obtain information related to the accident. *See* Correa Report at 3. Mr. Correa explained that he also reviewed federal and international regulations governing maritime vessels to evaluate compliance of the subject staircase, and he consulted the Code of Federal Regulations, the International Convention for the Safety of Life at Sea (SOLAS), and the International Safety Management Code pertaining to maritime vessels. *Id.* at 2. To determine the "compatibility of the designated pedestrian walking surface with internationally recognized construction and

maintenance Standards," Mr. Correa reviewed relevant portions of NFPA 301, Code for Safety to Life from Fire on Merchant Vessels, the International Building Code, and ASTM, Standard Practice for Safe Walking Surfaces, F1637-13. *Id.* He acknowledged that cruise ships are not specifically bound by certain building codes, but he explained that he identified and relied on "universal criteria that govern[] the construction and maintenance of safe walking surfaces." *Id.* at 3; *see also* Correa Dep. Tr. at 37–46 (discussing codes and standards regarding non-slip surfaces).[6] That fact that Mr. Correa did not test the coefficient of friction of the surface does not render his opinions or methodologies unreliable but, again, goes to the strength of his opinions which can be explored on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 5006071, at *6 (S.D. Fla. Aug. 23, 2015) (Goodman, J.) ("Carnival's contentions may surely be addressed during cross examination, but they are not a reason to strike the expert's findings or preclude his testimony at trial.").

---

[6] Defendant argues that Mr. Correa relies on irrelevant and inapplicable "land-based" standards to render his opinions, rather than applicable maritime standards, and that his reliance on these standards is unfairly prejudicial and should therefore be stricken. Mot. at 7–9. Plaintiff does not specifically address this argument in her Response. The Court concludes that the probative value of the standards relied on by Mr. Correa is not substantially outweighed by the risk of unfair prejudice or misleading the jury. Likewise, Defendant's challenges to some of the standards relied on by Mr. Correa, including provisions from the ASTM, NFPA, and the International Building Code (*see id.*), do not warrant striking testimony at this time. Although these standards are not binding on Defendant, as Mr. Correa acknowledged in his Report, he explained that he reviewed these standards "in order to determine the compatibility of the designated pedestrian walking surface with internationally recognized construction and maintenance Standards" that address walking surface conditions. Correa Report at 2; *see also* Correa Dep. Tr. at 48–49.

Defendant's challenges to Mr. Correa's methodologies go more to the weight that should be given to the testimony by a trier of fact rather than admissibility based on a *Daubert* challenge. The Court also notes that Defendant's arguments that Mr. Correa is not qualified to conduct slip-resistance testing and that his Report provides no learned treatises or literature supporting the reliability of his methodology (*see* Motion at 6) are unavailing given the methodologies and research he did conduct. Nor is this Court persuaded by Defendant's citations to *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193–94 (11th Cir. 2011),[7] *Jordan v. Celebrity Cruises, Inc.*, No. 17-20773-CIV, 2018 WL 3584702 (S.D. Fla. July 25, 2018), *report and recommendation adopted*, 2018 WL 4776336 (S.D. Fla. Sept. 21, 2018),[8] and *Jay v. Royal Caribbean Cruises Ltd.*, No. 20-CV-25052, 2022 WL 2187156, at *5 (S.D. Fla. June 17, 2022).[9]

The Court is satisfied that Mr. Correa's inspection, observations, investigation, and research, detailed in his Report and deposition testimony, demonstrate that his methodologies are sufficiently reliable to withstand challenges under Rule 702 and *Daubert*. This Court therefore agrees that "an engineer's use of techniques of visual inspection, code review, and

---

[7] Although the expert in *Rosenfeld* performed various coefficient-of-friction tests to determine the slip resistance of flooring surfaces on a cruise ship, that case does not establish that an expert *must* perform such testing on a defendant's choice of flooring or that such testing is the only reliable methodology to determine slip resistance. *See Lewis*, 570 F. Supp. 3d at 1192 (rejecting a similar argument challenging Mr. Correa's methodology).

[8] In *Jordan*, the district court found the expert lacked the "education, training, and shipboard work experience in slip resistance to be qualified as an expert" because "his background as a security officer does not render him an expert to determine when a bathroom tile floor becomes unreasonably slippery." *Jordan*, 2018 WL 3584702, at *6.

[9] In *Jay*, this Court found that the methodology employed by the expert in forming the opinion that a gangway was wet at the time of the plaintiff's incident was not sufficiently reliable to satisfy the requirements of *Daubert*, in part, because the expert's report neither provided "any scientific methods used to determine that the gangway was wet on the date of the incident," nor "any basis to believe anything other than common sense was used to reach this opinion." *Jay*, 2022 WL 2187156, at *5.

reliance on experience and expertise can satisfy the *Daubert* reliability prong." *St. Louis Condo. Ass'n v. Rockhill Ins. Co.*, No. 18-21365-Civ, 2019 WL 2013007, at \*4 (S.D. Fla. Mar. 11, 2019) (Torres, J.) (quoting *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 664 (S.D. Fla. 2012) (finding that a structural engineer's "experience as an engineer and his visual inspection of the Property . . . lay a permissible foundation" for his opinions as to causation of roof damage)).

Plaintiff has met her burden of demonstrating, by a preponderance of the evidence, the reliability of Mr. Correa's methodologies used to reach his opinions concerning the slip resistance of the nosing on the subject stairs. *See Rink*, 400 F.3d at 1291–92 (party offering the expert testimony must demonstrate admissibility by a preponderance of the evidence). Therefore, to the extent Defendant's Motion is based on the reliability of Mr. Correa's methodologies, the Motion is denied.

### Helpfulness

Mr. Correa offers five opinions in his Report. *See* Correa Report [ECF No. 42-1] at 6. Defendant argues that two of those opinions, the fourth and fifth, are improper legal conclusions that would not be helpful to a jury. Mot. at 9–11. Specifically, Defendant contends that Mr. Correa's fourth opinion, regarding Defendant's actual or constructive notice, constitutes a legal conclusion that improperly invades the province of the jury. *Id.* Similarly, Defendant maintains that Mr. Correa's fifth opinion, that the conditions were not readily apparent and were unsafe and that Defendant was responsible for those conditions, should also be stricken because it offers improper legal conclusions concerning Defendant's fault and whether the alleged unsafe conditions were readily apparent. *Id.* Plaintiff does not address Defendant's helpfulness challenges to Mr. Correa's fourth and fifth opinions in her Response and has, therefore, conceded as much by failing to do so. *See Pearson v. Deutsche*

*Bank AG*, No. 21-cv-22437, 2023 WL 2613635, at *9 (S.D. Fla. Mar. 23, 2023) (Bloom, J.) ("Whenever a party fails to respond to an opposing party's argument in a responsive brief, that party has forfeited any arguments in response; as a result, the party has conceded the opposing party's argument."). Therefore, the Court finds Plaintiff has abandoned the fourth and fifth opinions set forth in Mr. Correa's Report. In any event, this Court has considered those two opinions and agrees with Defendant that by assigning fault and indicating that Defendant had actual or constructive notice of the alleged unsafe conditions or was otherwise at fault, Mr. Correa intends to offer legal conclusions that improperly invade the province of the jury. *See Umana-Fowler*, 49 F. Supp. 3d at 1122 ("An expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" (quoting *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009)); *Holley*, 2021 WL 5371507, at *9 (citing cases).

Therefore, Mr. Correa is precluded from offering the fourth and fifth opinions identified in his Report (regarding Defendant's actual or constructive notice, whether the alleged unsafe conditions were readily apparent, and whether Defendant was at fault).

The Court notes that Defendant only challenges Mr. Correa's fourth and fifth opinions as failing to satisfy the helpfulness prong of the *Daubert* test. Therefore, it does not appear Defendant challenges Mr. Correa's remaining opinions on helpfulness grounds. Nevertheless, the Court finds Mr. Correa's first opinion satisfies the helpfulness prong because the matters of slip resistance explained in the Report are beyond the understanding and experience of the average lay citizen. *See Padula v. Carnival Corp.*, No. 16-23862-CIV, 2017 WL 7792714, at *6 (S.D. Fla. Oct. 13, 2017) (citing *Rosenfeld*, 654 F.3d at 1194). But, as explained below, Mr. Correa's second and third opinions are not relevant to the claims in this case and, as such, their helpfulness to the jury's understanding of the issues in this case need not be addressed.

14

Accordingly, based on Defendant's *Daubert* challenges, Mr. Correa is precluded from offering the fourth and fifth opinions set forth in his Report, but he may testify regarding the first opinion in his Report pertaining to the slip resistance of the surface of the staircase where Plaintiff fell.

### 2. Mr. Correa's Expert Opinions Concerning Negligent Design Theory Of Liability

The Court next addresses Defendant's challenges to Mr. Correa's second and third opinions in which Mr. Correa opines that Defendant created an unsafe condition by: (1) allowing the existence of excessively large handrails that were not graspable; and (2) allowing the existence of an excessively sloped tread surface. Correa Report at 7. Defendant argues that it would be unfairly prejudicial if Mr. Correa were permitted to offer his opinions regarding the design of the handrail, the design of the nonskid material, and the design of the nosing's slope because Plaintiff did not allege a claim based on negligent design in the Amended Complaint. Mot. at 11–12. Defendant maintains that the parties conducted discovery based on the two theories of liability set forth in the pleadings (negligent maintenance and failure to warn) and that Defendant's expert did not offer any opinions regarding the handrail, the dimensions of the non-skid material in relation to the nosing, or the slope of the tread on the stairs. *Id.* at 13.

In her Response, Plaintiff appears to rebut Defendant's argument by claiming, "Mr. Correa also pointed out that the condition of the nosing was a matter of maintenance rather than design, since the condition of the nosing should have been detected in the course of routine inspections." Resp. at 5. Plaintiff further asserts, "[t]he noncompliant handrails also could readily have been retrofitted during routine maintenance." *Id.*

As Defendant contends, the Amended Complaint does not include a claim based on negligent design. Rather, in her Amended Complaint, Plaintiff asserts claims for negligent maintenance and failure to warn. Unlike Mr. Correa's first opinion, the second and third opinions are directed at the design of the staircase and not Defendant's maintenance of it, and testimony about flaws in the staircase's design are not relevant to Plaintiff's claims but, instead, would likely confuse the jury.

"Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Frazier*, 387 F.3d at 1263 (citations and footnote omitted). "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury[.]" *Id.* Admitting speculative and potentially confusing testimony runs contrary to the purpose of expert testimony contemplated by Rule 702. *Id.* "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.*

Because Plaintiff's Amended Complaint does not include a claim of negligent design, the Court finds that the probative value of Mr. Correa's second and third opinions concerning the design of the handrails and slope of the subject staircase is substantially outweighed by the prejudice to Defendant and, most significantly, the potential to mislead or confuse the trier of fact. *See Kessler*, 2019 WL 8128483, at *4 (precluding engineering expert's opinions concerning "handrails, slope/drainage or floor tile selection" because there was no negligent design claim asserted in the case). *Cf. Mendel v. Royal Caribbean Cruises, Ltd.*, No. 10-23398-CIV, 2012 WL 2367853, at *3 (S.D. Fla. June 21, 2012) (King, J.) ("It is the law of this Circuit that a plaintiff who presents no evidence that the defendant actually created, participated in,

16

or approved the design cannot prevail on a negligence claim to the extent that the claim is premised on a theory of negligent design."); *Groves v. Royal Caribbean Cruises, Ltd.*, No. 09-20800-CIV, 2011 WL 109639, at *1 (S.D. Fla. Jan. 11, 2011) (Torres, J.) ("[T]here is no evidence in this record that [the cruise operator] actually participated in or approved of the design of these areas" and "because no negligent design theory is possible in this case, the expert's testimony as to the design flaws in the relevant areas of this vessel is moot.").

Therefore, Mr. Correa is precluded from offering his second and third opinions regarding the design of the subject staircase, including the handrail, nonskid material, and sloped tread surface, as the relevance of these is outweighed by the risk of confusion and unfair prejudice.

### 3. Other Challenges To Mr. Correa's Testimony

Defendant also seeks to preclude Mr. Correa from offering any opinions on causation, tread depth, and the crewmember stairs based on Mr. Correa's deposition testimony. Mot. at 12–13. As for causation and tread depth, Mr. Correa testified during his deposition that he has no opinions concerning these issues. *See* Correa Dep. Tr. at 17–18; 57. To the extent Defendant seeks to exclude Mr. Correa from offering expert opinions regarding causation and the tread depth of the subject stairs, the requested relief is unnecessary because Mr. Correa testified that he has no opinion on these topics and, therefore, there are no opinions to exclude.

Defendant also challenges Mr. Correa's testimony regarding his observations of the crewmember stairs. Mr. Correa testified that he noticed that the nosing on those stairs was similar to that on the subject stairs where Plaintiff fell but that the leading edge on the crewmember stairs had a grooved aluminum, while the subject stairs did not. *See* Correa Dep. Tr. at 33–34; 70 (Mr. Correa testified that, based on his observation as he was walking by the

crew stairs, he "was able to ascertain that the nosings were extremely similar [to the subject stairs] aside from that leading edge having grooves, fine grooves."). Defendant anticipates that Mr. Correa may try to compare the passenger stairs where Plaintiff fell to the crewmember stairs he observed during the inspection. Defendant argues that the crew stairs were outside the scope of the area to be inspected and that they are not relevant nor substantially similar to the subject stairs because they are for passenger use. Mot. at 12. Defendant further contends that any opinion regarding the crew stairs is unreliable, unhelpful, and unfairly prejudicial because Mr. Correa merely glanced at them as he walked by. *Id.* at 13. Plaintiff does not provide any response to Defendant's argument concerning Mr. Correa's comparison of the crew stairs.

The Court finds that Mr. Correa's testimony regarding his observation of the crew stairs in the same vessel and comparison to the subject stairs is not an additional expert opinion subject to exclusion under Rule 702 or *Daubert*. Instead, the testimony gives a description of Mr. Correa's observations which are relevant to the process he undertook in formulating his expert opinions regarding the stairs at issue. Defendant is free to challenge Mr. Correa's description of the crew stairs on cross-examination if it believes the description is inaccurate, and it may present evidence regarding the difference between stairs for passenger use as opposed to crew use, but none of these points require expertise. Of course, if Mr. Correa offers previously undisclosed expert opinions regarding the crew stairs, such an opinion, like any previously undisclosed opinion, would be subject to striking, but his observations of the crew stairs do not present that problem.

Accordingly, Defendant has not shown a basis for striking or precluding Mr. Correa's anticipated testimony regarding his observations of the crew stairs under *Daubert* or on

grounds of undue prejudice, and, as such, Mr. Correa is permitted to offer such testimony inasmuch as they are not expert opinions.

### B.  Plaintiff's Treating Physicians, Dr. Cahill and Dr. Florschutz

Defendant seeks to strike or limit the opinions of Plaintiff's treating physicians, Drs. Cahill and Florschutz, on three separate grounds. Mot. at 13–16. First, Defendant argues that both doctors should be precluded from offering expert opinions because neither provided an expert report as required by Federal Rule of Civil Procedure 26(a)(2)(C). *Id.* Alternatively, Defendant argues that their testimony should be limited to the scope of their treatment as documented in Plaintiff's medical records. *Id.* Second, Defendant asserts that Dr. Cahill's testimony will be cumulative of Dr. Florschutz's testimony. *Id.* at 15. And third, Defendant argues that Dr. Cahill should be stricken as a witness because she did not appear for her deposition. *Id.* at 16. The Court addresses each argument below.

### 1.  Whether Plaintiff's Treating Physicians Should Be Precluded From Offering Expert Opinions Due To Insufficient Expert Disclosures

On October 18, 2022, Plaintiff served Amended Expert and Hybrid Witness Disclosures ("Amended Disclosures") in which she disclosed Drs. Cahill and Florschutz as "hybrid" treating physicians. [ECF No. 42-4]. With regard to Dr. Cahill, an orthopedic surgeon specializing in orthopedic sports medicine, Plaintiff's Amended Disclosures state, in relevant part:

> Dr. Cahill is expected to testify as to the mechanics of Plaintiff's injury, causation, and treatment Plaintiff underwent in connection with her injury. Dr. Cahill is also expected to testify as to the course of Plaintiff's subsequent medical care and the long term/permanent effects of the injury. Specifically, Dr. Cahill will testify that the tibial plateau fracture was proximately caused by the Plaintiff's fall on the ship, that her surgical treatment was medically necessary, and that the Plaintiff will require future treatment in the form of a knee replacement as a result of the fracture . . . . The doctor is also expected to testify to the reasonableness and necessity of her services and the charges for same and whether they are representative of charges for similar services in the

19

> medical community; whether the subject incident was a cause of the injury, condition, symptom for which he [sic] treated the Plaintiff and the [sic] whether the Plaintiff will need future healthcare and palliative treatments or continuing treatment, procedures, medicines and services and the reasonable cost for those prospective services all within reasonable medical probability and they are all causally related to the subject incident. The doctor is also expected to testify as to the effects the injuries from the incident will have upon Plaintiff in her later years.

*Id.* at 1–2. As to Dr. Florschutz, other than the physician's name and reference to the surgery performed on Plaintiff, the Amended Disclosure is identical to the one for Dr. Cahill. *Id.* at 3. There is no dispute that neither of these doctors provided expert reports in this case.

In the Motion, Defendant argues that the Amended Disclosures include opinions beyond facts observed as part of Plaintiff's treatment and that Drs. Cahill and Florschutz should not be permitted to offer such expert testimony because they did not provide written reports as required by Rule 26(a)(2)(B). Mot. at 13. Defendant specifically argues that if permitted to testify, Dr. Cahill's and Dr. Florschutz's testimony should be limited to the scope of Plaintiff's treatment and medical records, and neither should be permitted to offer expert opinions regarding the mechanics of Plaintiff's injury, causation, the permanency of her injuries, prognosis, and long-term medical care. *Id.*

In Response, Plaintiff contends that Drs. Cahill and Florschutz should be permitted to testify, as treating physicians, regarding Plaintiff's diagnosis and treatment based on the content of their own medical records and observations during their treatment of Plaintiff. Resp. at 5–6. She does not address, in her Response, Defendant's contention that the Amended Disclosures indicate that she intends to elicit opinions from these witnesses that go beyond treating physician testimony.

In its Reply, Defendant argues that Drs. Cahill and Florschutz cannot be considered treating physicians because they did not have an "ongoing treatment relationship" with

Plaintiff. Reply at 4. According to Defendant, Dr. Florschutz had a limited role in Plaintiff's recovery, having first seen her the day after her injury and treating her for a total of eleven days before discharging her. *Id.* at 5. Similarly, Defendant maintains that Dr. Cahill saw Plaintiff only two times nearly two years after the incident. *Id.* at 6.

Defendant also argues in its Reply that Plaintiff's Amended Disclosures regarding Drs. Cahill and Florschutz do not comply with Rule 26(a)(2)(C)(ii). *Id.* Defendant maintains that the Amended Disclosures "include boilerplate areas of testimony rather than the summary of facts and opinions as to which the witness is expected to testify." *Id.* at 7. Defendant asserts it is unable to prepare for cross-examination of these witnesses and is therefore prejudiced due to the deficient disclosures. *Id.* Defendant requests that if these witnesses are going to offer the opinions set forth in the Amended Disclosures, Plaintiff should be required to submit compliant disclosures for these two witnesses pursuant to Rule 26(a)(2)(C). *Id.*

Thus, unlike Mr. Correa, Defendant does not challenge the admissibility of Plaintiff's treating physicians under *Daubert* and the Rules of Evidence, but, instead, Defendant seeks exclusion of their testimony due to Plaintiff's alleged failure to comply with her expert disclosure obligations under Rule 26 and a lack of a sufficient basis to consider these witnesses as treaters. The Court first addresses Defendant's challenges under Rule 26.

### Rule 26 Expert Witness Disclosure Requirements

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any expert witness it may call upon at trial. Pursuant to Rule 26(a)(2)(B), if a witness is retained or specifically employed to provide expert testimony in a case, the disclosure must be accompanied by a written report prepared and signed by the witness that sets forth the witness's opinions and the bases for those opinions. Fed. R. Civ. P. 26(a)(2)(B). If a party fails to provide information or identify an expert witness as required by Rule 26(a), the party is not

permitted to use that information or witness to supply evidence at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20322-CIV, 2013 WL 8695361, *3 (S.D. Fla. Apr. 4, 2013) (Torres, J.).

When, as here, a witness is not specifically retained or employed to provide expert opinions and testimony but is, nevertheless, expected to provide expert opinions as part of his or her testimony, Rule 26(a)(2)(C) requires the party offering such testimony to disclose the identity of the witness, the subject matter on which the witness is expected to present evidence, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(A)–(C). This summary disclosure required under Rule 26(a)(2)(C) is considerably less extensive than the report required by Rule 26(a)(2)(B), which makes it easier for non-retained experts to testify without preparing a comprehensive written report. *See In re Concept Boats, Inc.*, No. 19-CV-20526, 2020 WL 3162983, at *3 (S.D. Fla. May 28, 2020) (McAliley, J.). Even so, compliance with Rule 26(a)(2)(C) still requires disclosure of the subject matter regarding which the witness will present evidence, as well as a summary of the witness's opinions and the bases for those opinions. *See Jones*, 2013 WL 8695361, at *4. A reader of the disclosure must have an idea of the opinion(s) the witness will offer and of the facts on which the witness will base his or her opinion(s). *Id.* at *4.

Physicians are listed in the Advisory Committee Notes to the 2010 amendment to Rule 26(a)(2)(C) as one example of the types of witnesses typically subject to Rule 26(a)(2)(C). Although treating physicians are not generally required to provide expert disclosures in compliance with Rule 26, if the physician's testimony is expected to include opinions beyond mere facts observed as part of a patient's treatment, such as opinions regarding the cause of injuries, Rule 26(a)(2)(C) requires disclosures about such opinions of the physician, who was

22

not retained for the purpose of presenting expert testimony. *See Ortega-Guzman v. Sam's East, Inc.*, No. 16-81977-CIV, 2018 WL 11343940, at *2 (S.D. Fla. Aug. 30, 2018) (Zloch, J.).

Thus, a treating physician may testify as a fact witness regarding observations made during treatment of an injured person, and, if the testimony is so limited, the treating physician need not satisfy the expert disclosure requirements of Rule 26. *See Underwood v. NCL (Bah.) Ltd.*, No. 17-24492-CV, 2019 WL 1559659, at *3 (S.D. Fla. Apr. 10, 2019) (Torres, J.) (noting that treating physicians are not required to provide a Rule 26(a)(2)(B) report if opinions are based on observations made during treatment). However, "when a treating physician goes beyond the observations and opinions obtained by treating the individual and expresses opinions acquired or developed in anticipation of trial, then the treating physician steps into the shoes of an expert who may need to provide a Rule 26(a)(2)(B) report." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006). Likewise, the review and rebuttal of an opposing party's expert reports implicates a physician's expertise and exceeds the scope of treatment and, therefore, cannot be the subject of testimony by a physician witness without a written report. *Ortega-Guzman*, 2018 WL 11343940, at *4.

And, when a treating physician's testimony exceeds the scope of treatment, the simple disclosure of the name of the treating physician does not comply with Rule 26(a)(2)(B) or (C). *See Jones*, 2013 WL 8695361, at *4. Nor does the provision of medical records alone satisfy the "summary of the facts and opinions" requirement of Rule 26(a)(2)(C). *Id.* As Chief Magistrate Judge Torres explained in *Jones*, "[a]llowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'" *Id.* (internal quotations omitted).

In the instant case, Plaintiff disclosed Drs. Cahill and Florschutz as "hybrid" witnesses who are expected to offer opinions beyond those based on observations and opinions made

23

by treating Plaintiff but did not provide Rule 26 reports for either witness. Therefore, Plaintiff has not complied with Rule 26 as to these witnesses insofar as their opinions beyond treatment observations are concerned. The Court then considers the repercussions of the failure to comply with the Rule.

### Rule 37 And The Repercussions Of Failing To Comply With Rule 26(a)(2)

When a party fails to properly disclose an expert witness or expert opinions as required by Rule 26(a)(2), that party may not use the expert or opinion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) (Altonaga, J.), *on reconsideration in part*, 2012 WL 13008163 (S.D. Fla. Nov. 14, 2012). Failing to comply with Rule 26 is "harmless" when "there is no prejudice to the opposing party." *Id.* (internal quotations omitted). When assessing whether there was substantial justification for the failure to disclose or whether the failure to disclose was harmless, courts consider four factors: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Jones*, 2013 WL 8695361, at *4.

In *Jones*, Judge Torres considered a defendant's request to exclude treating physicians from presenting expert opinions under circumstances similar to those here and held that the plaintiff's failure to comply with Rule 26 by not providing expert disclosures for the testifying physicians was not substantially justified. *Id.* Judge Torres also held that for treating physicians whose depositions were not taken before the discovery cutoff, the plaintiff's

"failure to provide expert reports, Rule 26 disclosures, or other discovery . . . result[ed] in unfair prejudice to the [d]efendant, at least to the extent that [the plaintiff] intended to elicit expert testimony from these doctors." *Id.* at *6. In that case, the treating physicians were precluded from testifying at trial as expert witnesses but, as treating physicians, they were permitted to testify as fact witnesses regarding the general course of the plaintiff's medical treatment. *Id.*

With the foregoing in mind, the undersigned turns to Plaintiff's disclosures regarding her treating physicians, Drs. Cahill and Florschutz, and her Response to Defendant's Motion.

### Dr. Cahill and Dr. Florschutz May Not Offer Expert Testimony<br>Beyond Observations Made As Part of Plaintiff's Treatment

Initially, the Court notes that although Plaintiff disclosed what are clearly expert opinions beyond mere observations of treating physicians in her Amended Disclosures as to Drs. Cahill and Florschutz, in her Response to the Motion, she claims she only intends to offer their testimony regarding conditions observed in the course of treatment. That is, in her Response, Plaintiff states that she intends to offer the testimony of Drs. Cahill and Florschutz, as her treating physicians, regarding Plaintiff's diagnosis and treatment based on the content of their own medical records and observations learned as a result of treating Plaintiff's injuries. Resp. at 6. At the same time, however, Plaintiff claims that she disclosed their anticipated opinions in her Amended Disclosures, which go well beyond observations of treating physicians. *Id.* Notably, Plaintiff also indicates that she does not intend to elicit testimony from Drs. Cahill and Florschutz regarding causation of Plaintiff's injury or the place such injury occurred because there is no dispute that her onboard fall caused her fracture. *Id.* The difference between the Amended Disclosures and Plaintiff's representations in her Response to the Motion is problematic and has led to confusion.

25

To the extent Plaintiff intends to elicit Dr. Cahill's and Dr. Florschutz's opinions disclosed in the Amended Disclosures, Plaintiff is precluded from doing so because the Amended Disclosures include expert opinions beyond treatment observations for which the doctors did not provide expert reports pursuant to Rule 26(a)(2)(B), nor summary expert reports in compliance with Rule 26(a)(2)(C). Plaintiff's Amended Disclosures regarding both doctors do not satisfy Rule 26(a)(2)(C). Like those described by Magistrate Judge Goodman in *Worley v. Carnival Corporation*, Plaintiff's Amended Disclosures "merely list the *topics* of possible opinions which doctors might render without actually disclosing the *actual* opinion or tethering them to the specific facts of the case." No. 21-CIV-23501, 2023 WL 1840107, at *11 (S.D. Fla. Jan. 27, 2023) (finding the plaintiff's expert witness disclosures, which are strikingly similar to the ones in the instant case, "so generic that they could be used in *any* lawsuit involving physical injuries").

Thus, based on Rule 26 and the decisions interpreting the Rule's requirements, although a treating physician may offer testimony regarding information and observations learned as part of a patient's treatment without providing Rule 26 disclosures, such disclosures are required if the physician is expected to offer information or opinions that implicate the physician's expertise and are beyond the scope or facts observed during the patient's treatment. Here, Plaintiff's Amended Disclosures concerning Drs. Cahill and Florschutz identify opinions that go beyond treating physician observations (including the mechanics of Plaintiff's injury, causation, prognosis, long-term effects, costs, future care, and disability) such that reports complying with Rule 26(a)(2)(C) were required. *See Collazo v. Progressive Select Ins. Co.*, No. 20-25302-Civ, 2022 WL 178531, at *3 (S.D. Fla. Jan. 20, 2022) (Scola, J.) (the plaintiff was "undoubtedly required to provide a report for the treating physicians to the extent they are expected to testify about causation, prognosis, and any future implications"). And,

26

as noted above, Plaintiff's Amended Disclosures do not satisfy the requirements of the Rule. Moreover, in her Response, Plaintiff does not argue that the failure to provide adequate expert disclosures for Drs. Cahill and Florschutz was substantially justified or will not cause prejudice, and it does not appear that is the case.

Accordingly, to the extent Plaintiff intends to offer the opinions of Drs. Cahill and Florschutz set forth in the Amended Disclosures regarding causation, prognosis, future treatment, and costs, such testimony is not permitted because Plaintiff failed to provide Rule 26 disclosures regarding such expert opinions and failed to justify the failure to do so. Mindful that the striking of a witness is a drastic remedy, the Court finds that Drs. Cahill and Florschutz should be permitted to testify as treating physicians regarding their observations about Plaintiff's condition during her course of treatment, as well as Plaintiff's medical records.[10] Dr. Cahill and Dr. Florschutz may not, however, offer the other opinions identified in the Amended Disclosures, such as opinions about the mechanics of Plaintiff's injury, causation, disability, permanency of injuries, prognosis, the reasonableness of past medical costs, and the need/cost of future medical care. *See Worley*, 2023 WL 1840107, at *12.

### 2.  Whether Either Dr. Cahill Or Dr. Florschutz Should Be Excluded On Grounds Their Testimony Will Be Cumulative

Defendant argues that Dr. Cahill's testimony will be cumulative of Dr. Florschutz's testimony. Plaintiff again did not respond to this argument in her Response. The Court observes that both doctors are orthopedic surgeons expected to testify concerning Plaintiff's course of treatment and medical records. As described in the Amended Disclosures, Dr.

---

[10] In its Reply, Defendant contends that Drs. Cahill and Florschutz cannot be considered treating physicians because they did not have an ongoing treatment relationship with Plaintiff. Reply at 4–6. However, Defendant raises this argument, which is a separate ground for striking the testimony of both doctors, for the first time in its Reply, and, therefore, the Court will not consider this new argument. *See KMS Rest.*, 361 F.3d at 1328 n.4.

Florschutz performed a surgery as part of Plaintiff's initial treatment following the alleged incident. Dr. Cahill appears to have treated Plaintiff's injuries after Dr. Florschutz's surgery. Thus, their roles in treating Plaintiff were different, which Defendant does not deny. Based on the information provided, the Court does not agree that these doctors will offer the same testimony concerning Plaintiff's course of treatment, and, therefore, neither should be excluded as cumulative.

### 3.  Dr. Cahill's Failure To Appear For Her Deposition

Finally, Defendant argues that Dr. Cahill should be stricken as a witness because she did not appear for her deposition. Mot. at 16. Defendant contends that Plaintiff was responsible for rescheduling the deposition of Dr. Cahill before the Court's deadline for *Daubert* motions on December 2, 2022. *Id.*

In her Response, Plaintiff asserts that Defendant unilaterally noticed Dr. Cahill's deposition for November 18, 2022 but was informed by Dr. Cahill's attorney prior to that date that Dr. Cahill was not available that day. Resp. at 7. Plaintiff maintains that Dr. Cahill never indicated that she would not be willing to sit for her deposition and that Defendant made no effort to reschedule the deposition. *Id.*

Under these circumstances, the Court will not fault Plaintiff or her counsel for Defendant's failure to take Dr. Cahill's deposition. Because Dr. Cahill is not a retained witness, it is unlikely Plaintiff's counsel could exert any more control over this doctor than Defendant, whose counsel was in communication with the witness's attorney (*see* ECF No. 52-1). *See Worley*, 2023 WL 1840107, at *10. Defendant offers no indication otherwise. Moreover, given that Dr. Cahill is precluded from offering opinions outside the scope of Plaintiff's treatment and medical records, any prejudice to Defendant due to the inability to take Dr. Cahill's deposition is minimized.

28

Accordingly, Defendant's request to strike Dr. Cahill based on her failure to appear for deposition is denied.

## IV.    CONCLUSION

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that Defendant's *Daubert* Motion [ECF No. 42] is **GRANTED IN PART AND DENIED IN PART** as follows:

(a) Mr. Correa is precluded from offering expert testimony as to the opinions identified as numbers 2, 3, 4, and 5 in his Report regarding the design of the subject staircase, including the handrails, nonskid material, and sloped tread surface, as well as Defendant's actual or constructive notice, whether the alleged unsafe conditions were readily apparent, and whether Defendant was at fault. Mr. Correa may offer expert testimony as to the first opinion identified in his Report regarding the slip resistance of the walking surface on the subject stairs based on his observations and findings specified in his Report.

(b) Dr. Cahill and Dr. Florschutz are permitted to testify at trial as Plaintiff's treating physicians and may offer testimony concerning Plaintiff's course of treatment for her injuries, observations made during her treatment, and her medical records. Dr. Cahill and Dr. Florschutz are precluded from offering expert opinions or testimony regarding the other areas identified in Plaintiff's Amended Disclosures, including the mechanics of Plaintiff's injury, causation, disability, permanency of injuries, prognosis, the reasonableness of past medical costs, and the need/cost of future medical care.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of April, 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of record