**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-23787-CIV-SMITH/DAMIAN

ANGELIQUE CHAPPELL,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 34]**

THIS CAUSE is before the Court on Defendant, Carnival Corporation's ("Carnival" or "Defendant"), Motion for Summary Judgment, filed November 4, 2022 [ECF No. 34] (the "Motion"). This matter was referred to the undersigned by the Honorable Rodney Smith, United States District Judge, for a Report and Recommendation and for appropriate ruling on any related matters. [ECF No. 56]. *See* 28 U.S.C. § 636(b).

The undersigned has considered the parties' memoranda [ECF Nos. 34, 37, and 40], the documents submitted in support of the parties' filings, as well as all pertinent portions of the record and is otherwise fully advised in the premises. For the reasons set forth below, it is recommended that Carnival's Motion for Summary Judgment [ECF No. 34] be granted in part and denied in part.

## I.     BACKGROUND

This is a maritime personal injury action brought by Plaintiff, Angelique Chappell ("Plaintiff" or "Mrs. Chappell"), seeking damages for injuries she sustained following a slip

and fall while aboard Carnival's cruise ship, the *Horizon. See generally* Am. Compl. [ECF No. 21].[1]

On July 27, 2019, Plaintiff and her husband departed on an eight-day cruise from Miami aboard the *Horizon*. On the night of July 29, 2019, Plaintiff and her husband visited the ship's casino on Deck 4, where they were drinking alcohol and gambling. Throughout that same day, Plaintiff had consumed eight (8) or more alcoholic beverages.[2] At a little after 11:00 p.m., the couple decided to head back to their cabin on Deck 2 by taking an interior staircase (the "subject staircase"), which they had used multiple times before during their trip.

The subject staircase, identified as No. 160 on the *Horizon*, is carpeted, and the steps have a metal nosing at the front of the stair steps that includes a grooved, rubber strip in between the metal portions.[3] *See* Photographs of Subject Stairs [ECF Nos. 35-4 and 37-1]. The front part of the metal nosing wraps around the front edge of each stair step. *Id.*

At the time of the incident at issue, Plaintiff was wearing tennis shoes and walking next to her husband while holding on to the handrail with one hand and holding her

---

[1] The following facts are gleaned from Defendant's Statement of Undisputed Material Facts [ECF No. 35], Plaintiff's Response to Defendant's Statement of Material Facts [ECF No. 38], and Defendant's Reply thereto [ECF No. 39], and the record. All facts are undisputed unless otherwise noted.

[2] The parties dispute the amount of alcohol Plaintiff consumed during the date of the incident. In her deposition, Plaintiff testified that she consumed "[t]hree to five at the casino" and about two or three drinks before the casino, and when asked whether she believed she had consumed around ten drinks during the course of the day, Plaintiff testified, "Yes, that would be fair." *See* [ECF No. 55-1] Pl.'s Dep. at 33:13–16; 41:13–25.

[3] A stair's nosing is usually referred to as the front of the stair step or tread. "Nosings are installed at the edge of the step to provide both safety and prevent the step from becoming worn." *Taiariol v. MSC Crociere, S.A.*, No. 15-cv-61131, 2016 WL 1428942, at * 1 n.2 (S.D. Fla. Apr. 12, 2016) (Moore, J.) (citing *Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345 (S.D. Fla. 2015) (Lenard, J.)).

husband's hand or arm with her other hand. Plaintiff was looking forward, not down at the stairs, while she was descending the staircase. As she was approaching the second to last step, Plaintiff's left foot slipped on the metal nosing of the step, and she fell. There were no Carnival crewmembers or other passengers in the area before Plaintiff's incident.

Following the incident, Plaintiff was taken on a stretcher to the ship's medical center for evaluation. The ship's medical staff performed an x-ray of Plaintiff's left leg and informed her that she had a "significant break" and would have to disembark the ship. The morning after the incident, Plaintiff was transported by private jet from the Dominican Republic to a hospital in Tampa, Florida for medical treatment.

In the operative two-count Amended Complaint, filed July 8, 2022, Plaintiff alleges that Carnival owed her a duty to exercise reasonable care and that Carnival breached that duty of care by committing several acts or omissions pertaining to two dangerous conditions on the ship: (1) "a wet, foreign, or transitory substance, on the second to last step of the staircase," and (2) "[a]lternatively, the stair contained inadequate nonskid material on the nosing of the stair, causing the stair to be inadequately slip resistant." Am. Compl. at ¶¶ 13–14. In Count One, Plaintiff asserts a claim for negligent maintenance due to Carnival's alleged failure to: (a) "timely and adequately [ ] inspect the staircase on which . . . Plaintiff fell for slipping hazards"; (b) "cordon off or restrict access to the dangerous area of the staircase"; (c) "timely [ ] correct the dangerous condition of the staircase"; and (d) "adequately maintain the staircase." *Id.* ¶ 21. In Count Two, Plaintiff alleges Carnival failed to warn her of the "dangerous condition on the onboard staircase leading from Deck 4 to Deck 2" of the vessel. *Id.* ¶ 24. Plaintiff alleges she sustained permanent and continuing injuries, including a tibial

fracture, pain, mental anguish, disfigurement, disability, and the inability to lead a normal life. *Id.* ¶ 16.

On November 4, 2022, Carnival filed the Motion now before the Court seeking summary judgment as to both Plaintiff's negligent maintenance and failure to warn claims. Shortly after filing the Motion for Summary Judgment, on December 2, 2022, Carnival filed a Motion to Strike the testimony of Plaintiff's expert engineer, Andres Correa, as well as the testimony of her treating physicians, Drs. Catherine Cahill and Anthony Florschutz. [ECF No. 42]. Plaintiff also filed a Motion to Exclude the testimony of Carnival's expert, Dr. Daniel Buffington, a toxicologist. [ECF No. 41]. Relevant to the Motion now before the Court, the undersigned entered an Order on April 18, 2023, precluding Plaintiff's expert engineer, Mr. Correa, from offering expert testimony regarding the design of the staircase, including the handrails, nonskid material, and sloped tread surface, as well as Carnival's actual or constructive notice, whether the alleged unsafe conditions were readily apparent, and whether Carnival was at fault. [ECF No. 57]. Mr. Correa's expert opinions regarding the design of the subject staircase were excluded because Plaintiff's Amended Complaint does not include a claim of negligent design, and therefore, this Court found that the probative value of those opinions is substantially outweighed by the prejudice to Carnival and, most significantly, the potential to mislead or confuse the trier of fact. *Id.* at 16. And the opinions regarding Carnival's notice and fault were excluded on grounds they constitute legal conclusions that improperly invade the province of the jury. *Id.* at 13–14.[4]

---

[4] On May 2, 2023, Plaintiff appealed the undersigned's April 18, 2023 Order pursuant to Rule 4(a)(1) of the Magistrate Judge Rules of this District. Plaintiff's appeal pertains only to that portion of the Order precluding Plaintiff's treating physicians, Drs. Cahill and Florschutz, from offering expert opinions regarding the mechanics of Plaintiff's injury, causation, disability, permanency of injuries, prognosis, reasonableness of past medical costs, and future

The Motion for Summary Judgment is ripe, and this case is set for trial during the two-week trial period beginning September 11, 2023. [ECF No. 61].

## II.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a

---

medical needs. Therefore, this Court's ruling concerning Mr. Correa's expert opinions is final. [ECF No. 60].

sufficient showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III.   APPLICABLE LAW

General maritime law governs the liability of a cruise ship for a passenger's slip and fall. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1263 (11th Cir. 2020). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (internal quotation marks and citation omitted). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.'" *Id.* (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

Under maritime law, "a shipowner owes to all persons properly aboard the ship 'the duty of exercising reasonable care under the circumstances of each case.'" *Id.* (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)). The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 797 (11th Cir. 2019). "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident

constituted a dangerous condition." *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) (Ungaro, J.).

## IV.   DISCUSSION

Carnival argues that it is entitled to summary judgment on both counts alleged in Plaintiff's Amended Complaint for three reasons: (1) there is no evidence that there was a liquid or slippery substance on the subject step; (2) there is no evidence that the metal nosing on the subject step contained inadequate nonskid material or that it was not uniformly slip resistant; and (3) the alleged dangerous conditions were either nonexistent or open and obvious, thereby negating a duty to warn. Plaintiff appears to have abandoned her claim that there was a liquid or slippery substance on the subject step, but she maintains that the slippery nature of the metal strip on the nosing of the step was not open and obvious. Plaintiff also argues that the subject staircase was unsafe based on the opinions set forth in the Report of her expert engineer, Mr. Correa, that (1) the subject staircase did not contain a uniformly slip-resistant surface; (2) the handrails were too large; and (3) the stairs had an excessively sloped tread surface. Lastly, Plaintiff asserts that Carnival had constructive notice of the dangerous condition based on similar prior incidents involving slips and falls on the same and similar staircases within the *Horizon*, and a sister class ship. In its Reply, Carnival argues that Plaintiff's Response raises arguments not raised in the pleadings, and she should be estopped from asserting those new arguments now.

The undersigned will address this last point first before turning to the parties' other arguments below.

### A. *Plaintiff Is Estopped From Asserting New Theories Of Liability Not Alleged In Her Amended Complaint.*

To begin with, as Carnival points out, Plaintiff's Response to the Motion includes arguments based on theories of liability not alleged in the pleadings. That is, in her Response, Plaintiff asserts that the subject staircase was dangerous because the handrails were too large to stop a passenger's fall and the steps have an excessively sloped tread surface. *See* Resp. at 2–3. Plaintiff did not assert either of these claims in the Amended Complaint, and both are relevant to the design of the staircase, a theory not pled in the Amended Complaint. These claims are based on the Report of Plaintiff's expert engineer, Mr. Correa. And Plaintiff argues that because her expert offers these opinions, that is sufficient to create genuine issues of material fact and defeat summary judgment. *Id.* at 2.

As noted above, the undersigned addressed the issue of negligent design in the April 18, 2023 Order on Defendant's *Daubert* Motion, in which Mr. Correa's expert opinions regarding the handrails and sloped tread surface on the subject stairs were excluded on grounds those opinions are relevant to a negligent design claim whereas Plaintiff's Amended Complaint does not include a claim for negligent design. *See* [ECF No. 57]. Thus, pursuant to the April 18, 2023 Order, Mr. Correa is precluded from offering these opinions regarding the design of the subject staircase, including the design of the stair's handrails and sloped tread surface, in this case. *Id.* Mr. Correa is however permitted to offer expert testimony as to his first opinion in his Report regarding the slip resistance of the walking surface on the subject staircase based on his observations and findings specified in his Report. *Id.* at 15.

Even if these arguments were not already precluded as the result of the striking of Mr. Correa's opinions, Plaintiff would nevertheless be precluded from offering them now under the same rationale. Plaintiff's attempt to assert claims relevant only to a negligent design

theory of liability at this stage of the proceedings is improper. Simply put, the Amended Complaint does not allege a negligent design theory of liability, and Plaintiff cannot raise it for the first time in her Response to Defendant's Motion for Summary Judgment. In her Response to the Motion, Plaintiff asserts claims relevant to the design of the subject staircase – the handrails are too large to grasp, and the tread surface is too sloped. Resp. at 1–3. Because Plaintiff did not assert a claim for negligent design in the Amended Complaint, Plaintiff is precluded from asserting claims based on that theory at this stage in the litigation. As the Eleventh Circuit explained, "a plaintiff cannot amend h[er] complaint through argument made in h[er] brief in opposition to [a] defendant's motion for summary judgment." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 859 (11th Cir. 2020) (quoting *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013)); *see also Toussant v. Katzman Chandler, P.A.*, No. 21-CV-60635, 2022 WL 1664114, at *4 (S.D. Fla. Apr. 1, 2022) (Valle, J.); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99–10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving [a] motion [for summary judgment]."). That is, Plaintiff appears to be attempting to amend her complaint to include a negligent design theory of liability by raising facts and issues relevant to such a theory in her Response. And that she may not do.

Therefore, the undersigned finds Plaintiff's arguments based on the design of the subject staircase (the size of the handrails and the slope of the tread surface) are not properly before the Court and should not be considered for summary judgment purposes. The undersigned then considers Plaintiff's remaining arguments regarding Carnival's liability to determine whether a genuine issue of material fact exists.

### B. Dangerous Condition

As set forth above, a prerequisite to imposing liability on Carnival for the negligence claims asserted by Plaintiff is that Carnival had actual or constructive notice of a dangerous condition. *See Keefe*, 867 F.2d at 1322. In her Amended Complaint, Plaintiff alleges two dangerous conditions as bases for Carnival's liability: (1) "a wet, foreign, or transitory substance, on the second to last step of the staircase," and (2) "[a]lternatively, the stair contained inadequate nonskid material on the nosing of the stair, causing the stair to be inadequately slip resistant[.]" Am. Compl. at ¶¶ 13–14. Unlike the above-discussed claims, these alleged conditions are relevant to the theories of liability alleged in the Amended Complaint—negligent maintenance and negligent failure to warn.

### i. Liquid Or Slippery Substance On The Subject Staircase

Defendant first argues there is no evidence to support Plaintiff's allegation in the Amended Complaint of a wet or slippery substance on the subject staircase. The undersigned agrees.

In her Response, Plaintiff asserts "she slipped and fell on a metal strip found at the nosing of the stair she was descending." Resp. at 1. She does not offer or refer to any evidence that there was a liquid, or slippery, or any other substance on the subject stairs when she fell, nor does she offer any argument to counter Carnival's argument that it is entitled to summary judgment as to Plaintiff's claims to the extent they are based on allegations of a wet or slippery substance on the subject stairs. *See generally* Resp. In fact, although Plaintiff testified in her deposition that the metal strip or nosing on the subject step felt "slippery," she could not state whether there was some type of liquid or slippery substance on the step. *See* [ECF No. 35-1], Pl.'s Dep. at 51:6–16, 128:10–25. Similarly, Plaintiff's husband, Mr. Chappell, testified in his

deposition that he did not see any liquid on the stairs, and he believed the slippery nature of the metal strip itself caused his wife to slip and fall. *See* [ECF No. 35-2], Mr. Chappell's Dep. at 22:6–24, 24:8–25, 31:6–15.

Therefore, there is no evidence to support the claim in the Amended Complaint that a wet, foreign, or transitory substance on the subject step created a dangerous condition upon which Carnival's liability may be based and, as such, no genuine issue of material fact on this issue. In the absence of a genuine dispute on this issue, the undersigned finds that Carnival is entitled to summary judgment as to Plaintiff's negligent maintenance (Count I) and failure to warn (Count II) claims to the extent they are based on allegations of a wet or slippery substance on the stairs where Plaintiff fell.

The undersigned next considers whether Plaintiff has sustained her burden of presenting evidence sufficient to create a genuine issue of material fact based on whether the metal nosing on the subject staircase created a dangerous condition.

### ii.    The Metal Nosing On The Subject Staircase

Carnival argues there is no evidence that inadequate nonskid material or any defect with the nosing created a dangerous condition on the subject stairs. Mot. at 7. In support of this assertion, Carnival points to the opinions of its expert engineer, Christopher Wendt, who conducted slip resistance testing on the nosing on the subject stairs and opined that the nosing is reasonably slip resistant when wet or dry, and the materials comprising the nosing are adequately slip resistant. *Id.*; *see also* [ECF No. 35-7], Wendt Decl. at ¶¶ 9–18. Carnival also contends there were no open maintenance work orders for the subject staircase, Carnival's security inspected the nosing after the incident and found no defects with the step, and there

is no evidence that Carnival failed to correct any defect or to reasonably maintain the subject staircase. Mot. at 7.

In her Response, Plaintiff points to the Report of her expert engineer, Mr. Correa, who inspected the subject staircase and opined that the stairs were unsafe because they did not contain a uniformly slip resistant surface. Resp. at 1–2. Specifically, in his Report, Mr. Correa opined that Carnival "created an unsafe condition by allowing the existence of a walking surface that did not contain a uniformly slip resistant surface." [ECF No. 37-2] Correa Report, at 7.  Mr. Correa further opined that Carnival could have replaced the nosing or applied skid-resistant material to provide more consistent surface traction during the course of normal operation and maintenance of the ship. *Id.* at 4. Additionally, in his Report, Mr. Correa cites industry standards, including the ASTM Standard Practice of Safe Walking Surfaces and the National Fire Protection Association (NFPA) Standard NFPA–301, titled "Code for Safety to Life from Fire on Merchant Vessels," that provide guidelines and maintenance standards for safe walking surfaces. *See* Correa Report at 5–7. For example, the ASTM Standard Practice of Safe Walking Surfaces recommends that "[c]arpet on floor surfaces shall be routinely inspected . . . . Periodic inspection is particularly important at *step nosing edges.*" *Id.* at 61–62 (Ex. #7, Correa Report) (emphasis added) (citing ASTM Designation: F 1637–13, § 5.3.2, Standard Practice for Safe Walking Surfaces (2013)). Additionally, Mr. Correa's Report points to the standard guidelines set forth in NFPA–301 requiring that "stair treads be uniformly slip resistant." *Id.* at 6, 46 (Ex. #4, Correa Report) (citing NFPA 301, Code for Safety to Life from Fire on Merchant Vessels, ¶ 6.2.2.3.4 (2001)).

Thus, the parties have presented competing expert opinions, substantiated by evidence in the record, regarding whether the metal nosing on the subject stairs created a dangerous

condition. It is not the role of the Court to weigh these experts' competing testimonies at this juncture. The undersigned finds there is evidence in the record to support the existence of a dangerous condition on the subject stairs due to the slip resistance and non-skid material on the metal nosing that could have caused Plaintiff to slip and fall. *See Hoover v. NCL (Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020) (Cooke, J.) (expert opinion "suggesting that the different levels of available traction between the metal nosing on the stairs and the rest of the stairs" may have caused stairway to be unreasonably safe was sufficient to preserve matter past summary judgment); *cf. Torrents v. Carnival Corp.*, No. 19-24760-Civ, 2022 WL 3154511, at *5 (S.D. Fla. Aug. 8, 2022) (Scola, J.) (denying summary judgment on issue regarding whether an onboard stairway's purported dangerousness was open and obvious where the parties offered competing expert opinions). And, based on the competing expert opinions and supporting evidence, there are genuine issues of material fact that preclude summary judgment on the issue of whether the metal nosing created a dangerous condition, as alleged in the Amended Complaint.

The undersigned has considered Carnival's contention, in its Reply, that Mr. Correa's opinion—that "the lack of a uniformly slip resistant surface on the stairs" is a risk-creating condition—goes to negligent design rather than negligent maintenance. Reply at 4–5. In Count I of the Amended Complaint, Plaintiff alleges a claim for negligent maintenance based on Carnival's "[f]ailure [to] timely and adequately [ ] inspect the staircase on which Plaintiff fell for slipping hazards," "[f]ailure [to] timely [ ] correct the dangerous condition of the staircase on which Plaintiff fell," and "[f]ailure to adequately maintain the staircase." Am. Compl. ¶ 21. As discussed above, Plaintiff has offered evidence that the dangerous condition that potentially caused Plaintiff's fall could have been remedied during ordinary maintenance

through application of non-skid material or replacement of the nosing on the subject stairs with nosing that provided more consistent surface traction.[5] *See* Resp. at 4 (citing Correa Report at 4). As stated in his Report, Mr. Correa observed a similar crew stairway on the ship with a nosing that contained a "grooved aluminum surface along the leading edges, in addition to the grooved rubber strips," which differed from the nosing on the subject stairs where Plaintiff fell that was "smooth to the touch and did not contain any abrasive properties whatsoever." Correa Report at 3–4. Defendant's challenge concerning Mr. Correa's opinion on the slip resistance of the subject staircase goes more to the strength of the testimony, a matter that will not be determined by the Court on summary judgment. *See Haiser v. MSC Cruises (USA) Inc.*, No. 18-CV-60964, 2019 WL 4693200, at *5 (S.D. Fla. Aug. 8, 2019) (Smith, J.).

The undersigned finds that Plaintiff has presented sufficient evidence to show that the metal nosing on the subject stairs could have been defective for lack of a uniformly slip resistant surface and from which a reasonable factfinder could conclude that a risk-creating condition existed, which Carnival had a duty to protect Plaintiff against through proper maintenance of the nosing and adequate warnings. In other words, Plaintiff has presented

---

[5] The undersigned notes that neither party introduced evidence regarding whether Carnival inspected the metal nosing on the subject stairs for any defects prior to Plaintiff's incident. In its Motion, Carnival asserts that "Carnival security inspected the nosing after the incident and found no defects with the step, nosing, or nonskid material." Mot. at 7; *see also* [ECF No. 35-3] Vazquez Dep. at 77:25–78:14. Nevertheless, as noted above, based on the competing expert opinions, there exists a genuine issue of material fact as to whether the metal nosing created a dangerous condition on the subject staircase. Moreover, the issue concerning Carnival's maintenance of the metal nosing on the subject stairs is a question for the trier of fact to resolve, not for the Court to determine on summary judgment. *See Hodson v. MSC Cruises, S.A.*, No. 20-22463-CIV, 2021 WL 3639752, at *14 (S.D. Fla. Aug. 2, 2021) (Goodman, J.) (noting that expert testimony concerning industry standards and whether a ship owner's maintenance and inspection procedures fell below industry standards "is relevant in determining whether [the ship owner's] conduct fell below the standard of care") (quoting *Carroll*, 955 F.3d at 1269).

evidence from which a reasonable jury could conclude that Carnival breached its duty of reasonable care as to whether the alleged negligent maintenance of the metal nosing on the subject stairs and failure to warn of this unsafe condition was the cause of Plaintiff's fall. *Cf. Long v. Celebrity Cruises, Inc.,* 982 F. Supp. 2d 1313, 1317 (S.D. Fla. 2013) (Torres, J.) (concluding, where plaintiff was injured after her shoe caught on metal stair nosing while descending a flight of stairs on a cruise ship, "that a genuine issue of fact exists as to whether the improper and negligent maintenance of the nosing was the cause of Plaintiffs fall").

For these reasons, the undersigned finds that Plaintiff has sustained her burden of presenting evidence sufficient to create a genuine issue of material fact regarding the existence of a risk-creating condition concerning the metal nosing on the subject stairs based on allegations regarding the slip resistance of the metal nosing.

The undersigned next considers whether Plaintiff has met her burden of presenting evidence sufficient to create a genuine issue of material fact as to whether Carnival had actual or constructive notice of the alleged dangerous condition.

### C. *Notice Of Dangerous Condition*

As discussed above, to impose liability based on negligence claims, like those asserted here, Plaintiff must show that Carnival "had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. Carnival neglects to address the issue of actual or constructive notice in its Motion and Reply. On the other hand, in her Response, Plaintiff argues that Carnival had constructive notice[6] of the alleged risk-creating condition posed by the metal nosing on the subject stairs based on prior similar incidents involving passengers

---

[6] Plaintiff does not assert that Carnival had actual notice of the alleged dangerous condition, and she presented no evidence that Carnival had such notice, therefore, the Court need not address whether Carnival had actual notice.

slipping on the nosing on the same or similar staircases on the *Horizon*, and a sister class ship. Resp. at 3.

"[A] plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara*, 920 F.3d at 720 (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)). "The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). The Eleventh Circuit has held that prior incidents are sufficiently similar when the conditions surrounding the two incidents are similar enough to allow the jury to draw a reasonable inference concerning a defendant's ability to foresee the type of occurrence and its result. *See Hodson*, 2021 WL 3639752, at *6 (citing *Sorrels*, 796 F.3d at 1287).

"[E]vidence of similar accidents might be relevant to defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Jones*, 861 F.2d at 661 (quoting *Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338 (5th Cir. 1980)). In order to be admissible, "conditions substantially similar to the occurrence in question must have caused the prior accident," and "the prior accident must not have occurred too remote in time." *Id.* at 662–63 (citations omitted). Overall, "[d]etermining the remoteness of evidence is within the trial judge's discretion." *Id.* at 663 (citation omitted).

In response to Plaintiff's interrogatory regarding prior incidents involving "a passenger who allegedly slipped and fell on an interior, carpeted staircase with a metal and nylon anti-

skid strip on the nosing," Carnival disclosed eleven incidents that occurred between December 19, 2016, and May 24, 2019. *See* [ECF No. 37-4]. Six of the disclosed incidents occurred onboard the *Horizon* and five occurred on Defendant's sister class ship, the *Vista*. *Id.* In support of her argument that Carnival had constructive notice of the alleged dangerous condition, Plaintiff points to four incidents that occurred onboard the *Horizon* in which passengers allegedly slipped on the metal edge or nosing on staircases similar to the one on which Plaintiff slipped and fell. Resp. at 3. Additionally, Plaintiff cites deposition testimony from Carnival's corporate representative who testified that the disclosed incidents were compiled into a guest and crew accident summary report that is prepared for use in monthly safety meetings with all senior management of the ship to discuss potential safety issues during the given time period. *See* [ECF No. 37-5], Vazquez Dep. at 52:10–25, 53:1–2.

The evidence shows that at least four passengers have allegedly slipped on the metal edge or nosing on similar stairs[7] between July 7, 2018 and March 21, 2019—all before Plaintiff's incident. [ECF No. 37-3 at 1–4; ECF No. 37-4 at 3–5].[8] While the details on these

---

[7] Contrary to Plaintiff's assertion in her Response, these four incidents did not occur on the same staircase where Plaintiff's fall occurred. Rather, they each took place on similar staircases throughout the *Horizon* that contain the same type of nosing material. Carnival's corporate representative, Ms. Vazquez, testified that the "metal nosing with [a] rubber antiskid strip in the middle" is the same nosing that appears on every staircase on the ship. *See* [ECF No. 37-5], Vazquez Dep. at 48:14–18.

[8] According to the guest and crew accident summary report for the *Carnival Horizon* and Carnival's interrogatory responses regarding the prior incidents:

    (1) On July 7, 2018, a passenger claimed that while she was descending stairs No. 270 from Deck 1 to Deck 0, upon reaching the fourth step of the stairs from the bottom, she "slipped on the metal edge of the steps and fell backwards";

    (2) On October 14, 2018, a passenger claimed that, while she was descending the stairs marked as No. 60 from Deck 10 to Deck 9, she "slipped on . . . [the]

prior incidents are slim, the undersigned finds this evidence, viewed in the light most favorable to Plaintiff, is sufficient to create a triable issue of fact regarding whether Carnival had constructive notice that the metal nosing on the subject stairs, particularly where the non-skid material was not properly maintained (i.e., not uniformly slip-resistant), posed a risk-creating condition in the form of a slipping hazard. *See Cogburn v. Carnival Corp.*, No. 21-CV-11579, 2022 WL 1215196, at *5 (11th Cir. Apr. 25, 2022) ("Because [plaintiff] came forward with evidence of a substantially similar prior incident, we conclude that she established that [defendant] had notice of the risk-creating condition."); *Hoover*, 491 F. Supp. 3d at 1257. *Cf. Taiariol*, 2016 WL 1428942, at *4–6 (entering summary judgment in favor of cruise operator because the plaintiff failed to present evidence of other accidents involving a metal stair nosing that would put a cruise operator on notice that the use of such nosing on stairway was a dangerous condition).

Thus, based on the foregoing, the undersigned finds Plaintiff has presented sufficient evidence demonstrating genuine issues of material fact as to Carnival's liability for negligent maintenance and failure to warn based on the metal stair nosing.

Carnival may nevertheless be relieved of its duty to warn of the alleged dangerous condition, or stated differently, Carnival's liability for the failure to warn may be negated based on the open and obvious nature of the dangerous condition created by the metal nosing

---

anti-skid metal strip edge" on the third step from the top of the staircase and fell forward;

(3) On December 21, 2018, a passenger claimed that, while descending stairs No. 160 from Deck 6 to Deck 5, she "slipped on the metal edge of [the second] step from the bottom" and fell forward; and

(4) On March 21, 2019, a passenger claimed that he slipped and fell on the "metal strip of top stair" while descending staircase No. 60 from Deck 5 to Deck 4.

[ECF No. 37-3 at 1–4; ECF No. 37-4 at 3–5].

on the staircase. *See Carroll*, 955 F.3d at 1267 ("The open and obvious nature of a dangerous condition negates liability for failure to warn.").

### D. Open And Obvious

To establish Carnival's liability for a duty to warn, Plaintiff must demonstrate that the alleged dangerous condition, the slip hazard of the metal stair nosing, was not open and obvious. *See id.* at 1264 ("An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious.") (internal quotation marks and citation omitted). The question of whether a dangerous condition is open and obvious is guided by the "reasonable person" standard. *See Lamb By Shephard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1189–90 (11th Cir. 1993). Thus, "[i]n deciding whether a dangerous condition is open and obvious, the Court must determine 'whether a reasonable person would have observed the condition and appreciated the nature of the condition.'" *Hoover*, 491 F. Supp. 3d at 1256 (quoting *Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018)). Open and obvious conditions are those that "should be obvious by the ordinary use of one's senses." *Lugo v. Carnival Corp.*, No. 15-cv-21319, 2015 WL 9583280, at *4 (S.D. Fla. Dec. 31, 2015) (Moore, J.) (quoting *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (noting that open and obvious conditions are "discernible through common sense and the ordinary use of eyesight")).

The record evidence shows that Plaintiff and her husband were "familiar" with the subject staircase on the ship because they had used those stairs "multiple times" as their "chosen path," and they had also used similar stairs, with a metal, anti-skid strip on the nosing of the steps, on their prior cruises. *See* Pl.'s Dep. at 52:12–25; 53:1–10; Mr. Chappell's Dep. at 17:16–25, 18:1–4. When asked whether she noticed that the subject stairs between Decks 4

and 3 and between Decks 3 and 2 were slippery prior to her fall, Plaintiff testified, "No, I wasn't looking at the floor. I just know I slipped[,] and my foot came out from underneath me." Pl.'s Dep. at 48:12–20. Plaintiff's husband likewise testified that he had not noticed whether the nosing on the stairs was slippery at any time during the trip before his wife's incident, and that the stairs seemed normal to him. *See* Mr. Chappell's Dep. at 18:11–15; 25:9–12; 21:10–18. According to Plaintiff's husband, the sole witness to the alleged incident, "the metal stripping and the rubber sole, you know, that's why I think she slipped with just the metal that's on the lip of the stairs." *Id.* at 24:12–21.

Carnival argues that "the slippery nature of the metal nosing was open and obvious, and that "Plaintiff introduced no evidence that the metal was *unreasonably* slippery." Mot. at 8–9; Reply at 6–8. Plaintiff maintains that, while she "knew about the presence of metal on the subject stairs, there is no evidence that [she] knew that the specific configuration of the stairs or condition of the nosing made the stairs dangerous." Resp. at 4.

Carnival relies on *Taiariol* in support of its contention that the slippery nature of the metal nosing is open and obvious. Reply at 6–8. Like the instant case, in *Taiariol*, the plaintiff sustained injuries after slipping on the metal nosing on a step. 2016 WL 1428942, at *1. In granting summary judgment for the cruise line, the Court noted,

> [t]he gravamen of Taiariol's opposition to summary judgment is that it was the slippery nature of the metal wear strip—not the step itself—that set her fall in motion. However, the slippery nature of an aluminum wear strip is a condition that is "open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight."

*Id.* at *4 (footnote and citations omitted). In addition, the court noted there was no claim in that case that there was any defect on the stair or strip that caused the plaintiff's fall. *Id.* Moreover, as the *Taiariol* Court noted, the plaintiff "introduced no evidence or expert

20

testimony to create a genuine issue of material fact on whether the allegedly dangerous condition proximately caused her injury." 2016 WL 1428942, at *7 n.10. Here, although Mrs. Chappell's claim is likewise premised on the condition, or slippery nature, of the metal nosing on the subject step, unlike the plaintiff in *Taiariol*, Mrs. Chappell has introduced evidence, in the form of expert testimony regarding the slip-resistance of the metal nosing, sufficient to create a genuine issue of material fact as to the openness and obviousness of the alleged dangerous condition on the subject stairs. *See generally* Correa Report. Therefore, the circumstances in the *Taiariol* case are different.

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds there are disputed issues of material fact regarding whether the slippery nature of the metal nosing was open and obvious under the circumstances presented here such that Carnival is not entitled to summary judgment on the failure to warn claim on the theory its liability has been negated.[9]

## V.    CONCLUSION

For the reasons set forth above, the undersigned finds Plaintiff has presented sufficient evidence to establish there are genuine issues of material fact and to preclude summary judgment on the issue of whether Carnival may be held liable for negligent maintenance and negligent failure to warn based on the allegedly slippery nature of the metal nosing on the

---

[9] Even if the metal nosing on the subject staircase was an open and obvious danger, that does not preclude Plaintiff's negligent maintenance claim. As the Eleventh Circuit explained, the open and obvious nature of a dangerous condition does not act as a bar to liability for negligently maintaining premises. *Carroll*, 955 F.3d at 1268 (citing Restatement (Third) of Torts § 51 cmt. k); *see also Bunch v. Carnival Corp.*, 825 F. App'x 713, 718 n.7 (11th Cir. 2020) (per curiam) (noting that, although an open and obvious condition can "negate[ ] liability for failure to warn[,]" it does not relieve the owner of its duty to maintain) (citing *Carroll*, 955 F.3d at 1267).

subject stairs. On the contrary, Plaintiff has not presented sufficient evidence to preclude summary judgment as to Plaintiff's claims based on a wet substance on the stairs, and, as discussed above, Plaintiff is precluded from relying on evidence regarding the size of the handrails or the slope of the steps to defeat summary judgment.

## VI.    RECOMMENDATION

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment [ECF No. 34] be **GRANTED IN PART AND DENIED IN PART** as follows:

- That Summary Judgment be **GRANTED** in favor of Carnival as to Counts I and II of the Amended Complaint to the extent they are based on allegations of a wet or slippery substance on the subject stairs; and

- Summary Judgment be **DENIED** as to Counts I and II of the Amended Complaint to the extent they are based on allegations regarding the slip resistance of the nosing on the subject stairs.

The undersigned further recommends that Plaintiff be precluded from presenting evidence regarding the design of the subject stairs insofar as the size of the handrails and slope of the steps are concerned in support of her negligent maintenance and failure to warn claims.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Rodney Smith, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 20th day of June, 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Rodney Smith, *U.S. District Judge*
Counsel of Record